Sepolio, that's correct, Your Honor. Mr. Higgison. May it please the Court, I'm Robert Higgison. Along with my colleague, Ms. Christy Martin, we represent all of the city officers who have appealed Order 190. I would like to predominantly address the officer's entitlement to qualified I would also like to touch on the futility of plaintiffs being allowed to amend further. My colleague, Ms. Martin, will address the warrant and other issues. There are three overall points here. First is that the Court can consider the merits in this appeal from Order 190. Second is that the officers have not waived their right to assert qualified immunity by asserting their constitutional right to Fifth Amendment. And finally, that this Court should hold that the officers are entitled to qualified immunity because A, the plaintiffs did not plead specific facts showing that each, or indeed any, of these city officers who have appealed this order used excessive force against Dennis Tuttle or Regina Nicholas. And B, plaintiffs did not plead specific facts showing a violation of clearly established law. Order 190 is curiously written. In one sentence, it finds that the plaintiffs have pleaded facts sufficient to overcome qualified immunity and at the end of that sentence, the judge says, but I don't have enough facts to rule on qualified immunity. But the beginning of that sentence is a ruling denying qualified immunity and that is enough to bring us here. The plaintiffs have not cited any case that involves the assertion of Fifth Amendment claims constituting a waiver of their entitlement to qualified immunity and that is hardly worth addressing unless the Court has questions about that. I would like to look at the allegations against each of the ten officers regarding the claim for excessive force. And the answer is no. Could this order just be read, if you're trying to make sense of the order, that it survives 12B, the pleading standards, and we're moving on in life to summary judgment, so bring it. I mean, could it be read in that simple of a way that we're going to have summary judgment and you're going to bring forth facts, but this is enough on 12B? Well, that seems to be what he's saying. That seems to be what he's saying. The judge said that the discovery that has already been given to plaintiffs so far, which is about 70,000 pages worth of documents, really doesn't count in a sense and that what he wants is, in his words, butts in chairs. He wants depositions. And so he wanted to have really very robust and extensive discovery and that's what one of the things qualified immunity is supposed to protect officers from going through. It's supposed to be decided early in the case and not wait until there's a lot more to do a summary judgment. But weren't there some limits on those depositions? It wasn't full on merits depositions. It was limited to what was their role or what not, you know, that sort of thing. Yes, and they have pleaded their Fifth Amendment, which is about a different matter, but since the plaintiffs have alleged that this other matter connects to this matter, that it would be in a deposition and not be asked questions that might go to this other matter they've pleaded Fifth Amendment claims. Why is that so difficult? I'm just, you just have it in the jury room and the judge sits in there or goes in and out as needed and they take the Fifth and then you do the next question and then you every once in a while have the whether it's really in the scope and it's, I don't, but it's only on these topics and if they go to talking about the merits and not about the qualified immunity issues, then there's a big objection and then the judge has to say, well, that seems to be, why isn't that just a normal thing that happens all the time? I mean, it's not normal all the time that people plead the Fifth in these cases, but it's very doable and manageable in a trial court, an experienced trial court. Well, and perhaps it would be more manageable than I'm envisioning. I'm thinking in terms of the way things have been pleaded from the plaintiffs, but perhaps it would be more manageable than I'm thinking. Maybe you should just tell me, tell us why the legal reasons why this is wrong or why this is inappropriate. Okay, well, we certainly can be back up here in a few on the pleadings because they haven't pleaded a cause. They haven't pleaded a cause on which relief can be granted and so we're supposed to decide qualified immunity at the earliest stage in the process and that would be the main legal reason not to do the other, to go forward through depositions, even if they're all very practicable. Counsel, you mentioned the tens of thousands of pages of discovery. I take it from the lack of discussion of videos that squad 15 members were not wearing body cameras. In 2019, when this happened, narcotic squads had not yet been issued body-worn cam. The body cam program had only started, had a pilot program in 2013. It took several years to work that through. In 2018, it first started getting rolled out to patrol. Narcotics didn't get it for a few years. There was a great deal of concern about narcotics squads having body-worn cameras because they do undercover work all the time. If you have this thing hanging on the front of you, it kind of tips off who you are. I just want to make sure that we're not going to expect in a summary judgment thing to have a video. There are videos. There are. Yes, just not from narcotics body-worn cameras. There is a compiled video that puts together, it's four videos from two body-worn cameras from perimeter officers who were not part of the narcotics squad, but they were there to secure the perimeter, and from a cell phone from a neighbor, and from a surveillance camera from another neighbor. They've all been put together. It doesn't show what's happening inside the house, so it's all external. There is a video, and it has audio, and you can get something from that. That's taken up my time. I'm sorry to use your time. That's perfectly... Are those videos before us properly on the... The video is not in the record. It was submitted in chambers, and it didn't get out of chambers. Okay, so it's not before us. No, however, there is something else in the record that is before you that it goes to the futility of them being allowed to replete. Since I've run out of time, I'll just refer you to what I put in, what we have in our reply brief, detailing the allegations against each of the 10 officers, and why they haven't pleaded a claim against them, coupled with the both the Tuttle plaintiffs and the Nicholas plaintiffs have alleged that Dennis Tuttle had a .357 Magnum, and he just might have shot the officers, and there were four officers shot. With that, they cannot plead anything that says that it was objectively unreasonable for the officers to use deadly force against them. Can you clarify? You said we can consider this complaint incorporated in some way that would be appropriate, or is that beyond the scope of what we're here to do today? Well, I think it only would really go to the futility of them being allowed to amend again, because they didn't ask the district judge to let them amend again, but they suggested that in their brief here, and it would be futile to do that because now, with all of that information, they know that Dennis Tuttle had DNA on the revolver, and that the bullet that hit and paralyzed Officer Lovings came from his revolver. But I'm asking, is it proper for us to consider that when ruling about whether the district court did not grant qualified immunity or did not, you know, on the 12B stage? Your Honor, I don't think so. Legally appropriate for us to look at that. No, I don't think so. Judge, I'm sorry. I don't believe it is proper for that purpose. I think for the limited purpose, and we'll be back on summary judgment if this goes back with all that in there, but for the limited purpose of overruling their request in their brief here to allow them to amend again, that's just, my reference to it is just for that purpose. Counsel, if the Chief Judge will permit me, I have one more question, not about Tuttle. It's about Ms. Nicholas. So the way I read the allegations about Ms. Nicholas is that the Squad 15 officers just straight up murdered her. They busted into the house, shot the dog, and murdered an unarmed woman. What, in addition, would they need to plead? Okay. As to, and I'm just talking about Ms. Nicholas. Right, and that is how they pleaded it, and they did say that it is like a movie, and in fact, their telling of it is like a movie, and the way that they should have pled it, if they were going to have pled something that could state a claim, is that she and the person with her complied completely. What they have said is that she presented no risk, no threat. That's a conclusory statement that really doesn't fit within the constraints of allegations of conduct. Given the totality of the circumstances that the officers were working from, what they had as they went in, knowing there was a dog there, there's supposed to be heroin there, they're supposedly armed, and in fact then, they see a gun here, the dog starts acting up over here, and how then would somebody in Ms. Nicholas' position, her heirs be able to I, that she was, that she had zero to do with it, that she was completely compliant, and that she wasn't even near that. Now, there could even be qualified immunity for a claim like that, because of her proximity to Mr. Tuttle, and him shooting the officers. But why isn't that pleaded well enough until the qualified immunity is engaged, and then, you know, Well, they didn't plead it well enough because they've acknowledged that Tuttle may have shot the officers, and you can't have a may have shot the officers. It doesn't require that he be the one who shot them. They pleaded very specifically that officers were shot. The Tuttle plaintiffs throw out a question, or one of, no, the Nicholas plaintiffs throw out a question about, well, maybe it was friendly fire. They can't plead that. They didn't plead that. It's just a suggestion. That's not an allegation. The Tuttle plaintiffs pleaded that if Tuttle shot him, it's because he thought it was some gang breaking into his house, and it was self-defense. That's not a legal basis for him to take that action, and it doesn't entitle him to fire upon officers. So, for them to use words like murder, and Why doesn't it? I'm not trying to be flippant. If you think that the person is really a gang member there to harm you, and not a police to take action to defend yourself, you know, you don't have to CID and do all of that sort of thing. Now, the United States Supreme Court has eliminated the provocation doctrine, and we've cited that case in our brief. Well, it doesn't mean it's justified, but it's not. Well, because they have basically pleaded that he shot officers. He didn't even have to shoot anybody. Even in that situation, with that information, what we're looking at here is qualified immunity against their plea. You know, they haven't stated a claim if... I think you've answered my questions the best that they can be answered. Thank you. Ms. Martin? May it please the court. I would like to spend most of my time talking about the Fourth Amendment search and seizure claim, but I did want to start by answering in a slight more detail Judge Alrod's question earlier about why the depositions that were ordered in Order 190 were not sufficiently limited. And this court's opinion in the Zapata case, which we cited in our brief, describes that an order that says the depositions will be limited to the issues of qualified immunity is not sufficiently specific enough, and that's the same language that's in Order 190. So just, you know, having four depositions on the issues of qualified immunity is not going to be sufficiently specific under this court's pre-Carswell jurisprudence. Now, all of this sets aside Carswell, which says none of it happens before we have a ruling on qualified immunity on the pleadings. Under the old precedent, we were trying to get Judge Bennett to narrowly tailor the order and say, what are the questions that we're going to talk about? If you want to know who shot whom when, then make your order say that. And the order was not written that specifically, and so that by itself is reversible error under this court's pre-Carswell jurisprudence. Under that jurisprudence, though, wouldn't we just say you abused your discretion because you didn't narrowly tailor, and you must narrowly tailor, and then you can do what you were going to do anyway, but you must put some more need on the bones, so to speak? Yes, I think that's the remedy if the pre-Carswell jurisprudence were applicable. Well, yes and no. If the court hadn't also reached the first finding, which is you state a claim that if you state facts that if true would overcome the officer's qualified immunity for the warrant claim and the excessive force claim, in Zapata, that finding wasn't made. And so in Zapata, this court sent the case back to one, make that finding, and two, narrowly tailor the order. This case is different from what we had in both Carswell and Zapata in that that first finding is in there. That would be what we called the first Bakke finding under Bakke v. LeBlanc. That finding gives this court the ability to substantively address whether the plaintiff's stated facts that if true would overcome qualified immunity, which is tantamount to a ruling on the 12 v. 6. So this court is well within its discretion to not just simply remand, start over in the district court. This court can substantively reach the issues that we've got. So we would just on the ones that the court ruled on, to the extent the court ruled, we would just look at the complaint and see if it's sufficient like we do all the time when we get these interlocutory appeals constantly. Agreed. It would be in on those particular ones where it's clear that the court ruled. And if we were not clear that the court had ruled on the 12 v. thing, we would require the court to make a 12 v. ruling. Yeah. And so that might delay the depositions, but to the extent the court did make a 12 v. ruling, I'm just trying to figure out, what do you want us to do? Okay. The court has substantively said that the 4th Amendment warrant claim and the 4th Amendment use of force claim states facts that if true, would overcome qualified immunity. The court explicitly refused to put in that order the bystander liability, the bystander failure to intervene slash conspiracy, all that together. That was not included in the order and that was struck from the draft that plaintiffs provided intentionally. The court did that on the record. So we know the warrant claim, the judge found that it survived the 12 v. 6. The use of force claim found survives 12 v. 6. We can infer from the failure to include these claims, they do not survive the 12 v. 6. And so those, this court should affirm that those claims are dismissed and the only thing. We can't do that interlocutorally though. That's, we don't affirm dismissals of the interlocutory parts that you went on. We only look at the ones, we've had this before, and do you know of a case that says we can interlocutorally affirm those decisions when it's not denial of qualified immunity? That's a granting of qualified immunity, so to speak, or because it's a failure to plaint. We don't, we don't in the middle get into that part of the case, I don't think, unless you can have some authority. I'm not saying that you won't ultimately have those, those claims will just hang out until the end of the case, but they're not, we don't rule on them unless they were bringing an appeal at the appropriate time that those claims got dismissed. Well, let me rephrase it this way. Normally, anybody who has a problem with an order has to appeal, and if they had a problem with 190, they would have to cross appeal. Right, but they can't appeal that interlocutorally. Right, so that would just have to hang out until final. So they would hang out. Yeah, even though they're gone. It'd be gone, and then they would argue that in the final appeal of the case, but it wouldn't be as interlocutorally addressing the ones they lost on. We only have the jurisdiction on the ones that they rule one on or the fact that they, the court didn't rule on ones that they were supposed to when you claimed qualified immunity. Does that make sense? It does, and I hear what you're saying, and I hadn't thought of it from that perspective before. If I'm wrong, I've been working to correct it. Well, I will say that, you know, this court is well able to consider any portion of the order that is currently jurisdictionally properly before it, and if we have in the record that the court expressly refused to state that the bystander liability states facts that if true would overcome qualified immunity, then, I mean, that's, that is, I think, something that the court can look at too, but I don't have authority for that. I want to make sure I understand the discovery dispute. How many people were in the Harding Street house on January 28th? Two. The two suspects were in the house. As far as the officers go. I know about all of them. So there's two, the two suspects who are now deceased. Correct. And the dog. Correct. So what discovery is there to do beyond deposing the officers that really should take place? Because the city produced, again, the 70,000 pages plus. Plaintiffs also obtained additional materials, including the Texas Rangers investigation report, and then there were some materials from the Houston Forensic Science Center, which those are the ones that wound up in the record, in the appellate record on this case. That's why we the officers need or want, or is it just the plaintiffs needing to depose the officers that we're getting more documents or whatever it is that the plaintiffs want? The individual officers, I'm sorry, I'm out of time. Can I finish? Thank you. The individual officers would like to hear from the Texas Rangers in deposition if, if depositions were permitted, because the Texas Rangers were brought into the case by the District Attorney Kimmock to perform an independent investigation after the Nicholas family made certain allegations in their Rule 202 petition, and the Texas Rangers report specifically considered the allegations that were made by the Nicholas family and effectively debunked those theories. But we would like to hear from the Texas Ranger, and that was part of Order 190, but the rest of it, obviously, the officers had, some of the officers still have criminal investigations pending, and so depositions of the individual officers at this time would still be dicey under Fifth Amendment. Okay, so just to be clear of what were our homework today, we're supposed to determine whether or not the District Court correctly ruled about the 12b claims on the warrant and the use of force, and therefore, if you were to win on both of those claims, and I'm not foreshadowing, I'm just trying to figure out what would happen, then we wouldn't ever get to where these depositions should go forward, because that's all that's, so we wouldn't have to deal with the cars, well, none, any of that, because you, and you want to win straight up on their failure to plead on 12b, right? That's correct. And that's the old law, new law, whatever law that you believe you win on those. Now, if you win on one of them and not the other, then we deal with whether there should be discovery narrowly tailored on the, on the one that's left. That's correct. Is that where we are? Yes, but the court is also for getting supervisory liability. Okay, that's also part of Thank you. Would you add five minutes, five minutes to the, Ms. Nicholas? May it please the court, my name is Margaret Bryant, and I represent the Nicholas and Tuttle parties as well as the police officers, that discovery order 190 should be vacated under Carswell. They also agree that the parties also agree that the district court has not ruled on the motions to dismiss based off of qualified immunity, with the exception of Officer Todd, and that order is the subject of a separate appeal. So I plan to talk about today is why this court should not use the discovery order as a vehicle for ruling on the motions to dismiss based off of qualified immunity. So does that mean that everything we just talked about you don't believe is right? That's correct. The 12B ruling that you don't think the court ruled on those two claims on the 12B? That's correct. The district court has not ruled on the motions to dismiss based off of qualified immunity. Back when the parties were discussing order 190 and the district court was issuing under order 190, they were in what the police officers referred to as BACI land, and under BACI, a district court could defer its ruling on a motion to dismiss if it made two preliminary findings. One was that the pleading sufficiently overcame the qualified immunity, and two, that it still needed additional discovery before it ruled on the motions to dismiss, and then it could order limited discovery, which is what happened here. And that was referred to as the BACI two-step. Well, about 17 days after order 190 came out, we had Carswell, and under Carswell, this court ruled that discovery is no longer permitted before a ruling on a motion to dismiss based off of qualified immunity, and it overruled BACI in all of those cases that permitted that BACI two-step. You say that this is an agreement between both sides. I don't see that they have an agreement with you on this, because I think they said that plaintiffs have stated sufficient facts to overcome the assertions of qualified immunity against Reyna, Todd, Gonzalez, Gallegos, it goes on and on. On these particular claims is a 12B ruling, so that's what I don't understand. I don't think there's agreement here on that. I think they believe there was a ruling on 12B, but what we have left is on those three parts, and that what we have left is summary judgment, but they're appealing the 12B determination. As I understand it, they recognize that there hasn't been a 12B6. Well, it says it right here. They have stated sufficient facts in their amended complaint to overcome the association by them, their claims, stated sufficient facts. That, to me, is a 12B ruling. I don't understand how that's not a 12B ruling. Stated sufficient facts on these three claims to overcome qualified immunity. It says it's the main finding of the opinion, of the order. That is a preliminary finding that was permitted under Bakke. The court could have still gone forward and after the that this is a preliminary ruling under Bakke, or is that something we have to decide? Well, I think if you look to, well, first of all, this court, I don't believe, has jurisdiction over the preliminary finding. If you look to whether or not it's a final judgment, the court asks when it's an interlocutory appeal. It wouldn't be a final judgment because if you won, so it would just keep it going. That's, and then they would do an interlocutory appeal. Right. I misspoke. I didn't mean a final judgment, but whether it was a final ruling, I apologize. Whether something's a final ruling on an interlocutory appeal, you look to whether or not the district court intended to have anything further to do with the motion. And if you, and you look to what the court said, and in Order 190, it clearly says I'm unable to rule on said immunity defenses at this time. If you also look at the record, the court clearly anticipated ruling on the motions to dismiss later. But why, where does it say that, that it was going to be motion to dismiss even after you gather facts rather than summary judgment? Where, how do we know that? Because the court discusses it in the record repeatedly that he's going to rule on the motions to dismiss later. Well, it wouldn't be a motion to dismiss. That's the point I think Judge Alfred is trying to make. I think. You can't add facts to a complaint and then say I'm ruling on 12, under 12B motion to dismiss. It's converted to a summary judgment at that point. I think it would still be at that point a ruling on the pleadings. The district court intended for there to be additional briefing, including a Schulte reply, which is related to the dismiss standard, as well as a potential that the plaintiffs would amend the pleading and then he would rule on the motions to dismiss. This confusion is highlighting, obviously, the reason why these things are quite difficult to have this hybrid discovery, where it's kind of a motion to dismiss, but not really a motion to dismiss, and then it's back to a motion to dismiss, and maybe a summary judgment, and no one really knows what's going on. So if we can, if we can just talk about the alternative argument that you make about whether and to what extent, because I mean, the ruling's in your favor, right? So it's quite interesting that you don't want us to review it. I mean, this is a pretty extraordinary complaint, and as I was talking to your friend on the other side, I mean, especially as to Ms. Nicholas, it alleges that she was just straight-up murdered sitting in a chair or couch and that the dog was shot. And so I can understand why one would say that that would pass 12B-6. Can I ask you a couple questions about the allegations in the complaint? Yes. So can you help me understand what the information and belief would be, like when you sit down to write a complaint and the two clients are deceased, what would be the basis for the allegation as to who shot first on either side, right? So I can understand why the officers would make an allegation that they didn't shoot first, but they're not swearing out the complaint. What would be the information and belief necessary to swear out the complaint that, no, no, the dog was shot first, and then the officers murdered the family members of your two clients? Well, there's the allegations that they were unarmed, and that's repeated throughout the motion. The police officers mentioned that in the alternative, there is a pleading of title of shooting, but that's alternative. Throughout the pleading, they alleged that they were unarmed, and so that would support that they didn't shoot first because they didn't have a gun. So what do we do with the .357 Magnum? The .357 Magnum? The revolver. That's not mentioned, and I'm not sure what you're referring to. Mr. Tuttle's .357 Magnum. That's not mentioned in the pleadings. The pleadings repeatedly talk about how he's unarmed, but we deny that he is armed. And so at the 12B6 stage, you take the pleadings at their word and that Tuttle was unarmed, and to the extent there is that hypothetical, it's in the alternative, and at the pleading stage, you can look at if there's one plausible pleading, that's all you need to overcome it, and that's that they were unarmed. And again, I don't mean it to be a trick question. I'm genuinely interested, just as someone who has previously written complaints, I'm just interested in understanding when you sit down to go and make the allegations in the complaint, there obviously needs to be information and belief for each specifically pled fact, right? So you specifically plead, dog was shot first. First thing that happens, straight through the door, shotgun blast, dog's dead. The next allegation is that everybody's unarmed, not withstanding the .357 Magnum that was at least one bullet of which was found in one of the officers. So I'm just curious if both of the occupants are deceased and there's no other witnesses on the family's side. I'm just trying to understand how one goes about swearing out those allegations. For one, the mention of the officer being shot with one of the bullets, that is not in the pleadings at all. But also there is, the pleadings discuss that the Tuttle and Nichols parties had a forensic expert come in and evaluate the look at the ballistic and what that showed. And it showed that the dog was shot first, that Ms. Nichols was shot from an officer who was outside who couldn't even see her, and that Mr. Tuttle was shot in the doorway, I believe. But if you come into the house after the fact and there's casings everywhere, I understand that you can trace bullet patterns through walls and bodies. And obviously this is a horrible series of facts here. I'm just not sure I understand how you would figure out a forensic expert, even after discovery. I'm just trying to understand how this case would even go. Because how would you figure out that this was the first bullet and that was the second bullet when there's brass and blood and things all around? That is outside my area of expertise as well. I do not know. But that's in the pleadings, is about the forensic analysis. But the forensic expert says, based on his or her analysis, that the officers shot first. That's what's in the pleadings. And at this point, that's what we look at, is the pleadings. Okay. So you obviously thought we were doing something different than what I thought we were doing today. Do you want to tell what you think we should be doing as our homework? I understand that we're not completely in agreement about what the right step is, but I'm just trying to see what you want us to do. I think your homework is very simple. You look at Carswell. Under Carswell, Carswell is now the rule. Order 190 orders discovery and therefore it should be vacated. And we think it's a simple per curiam ruling that in light of Carswell, order 190 should be vacated and this case remanded. I think it's looking at the case under Bakke. It's interesting to note this court's jurisdiction. At that time, this court did not have jurisdiction of a Bakke order if it complied with the Bakke 2 step, even though this court would have jurisdiction to rule on a denial of omission for 12B6. So this court has never had jurisdiction to review a preliminary finding like they're asking you to look at, the finding in order 190 about the pleadings, except to evaluate whether or not it complied with Bakke. And Bakke no longer exists. It's no longer a good law. So there's no longer a jurisdictional basis to look at it. Additionally- Are you at all arguing that Carswell itself violates the rule of orderliness or any such thing? Or you kind of seem like you're just accepting it and moving on that you don't get discovery. Is that your complete argument? I'm not saying that it does violate, but please, I'm just making sure you're not, you say it's very different than what the existing law in our circuit was. Are you just accepting it and you're not seeking any relief from it? That's correct. We're accepting Carswell as is. Yes, Your Honor. Okay. So then would the order that you seek, would it say, well, the district court must immediately rule on the 12B conclusively to the extent it hasn't already done so before doing anything else in the case so that they can take up their appeal on the qualified immunity? Is that what you're saying should happen? Well, we think we, you know, you can say in light of Carswell, this case should be remanded and for further proceedings in the trial. What would be the further proceedings is what I'm saying. Well, actually, we would like to dismiss the police officers. This case has been going on for a long time. There's been as documented in the briefing, lots of delays in the process. And although we are strong, confident in our allegations against the police officers, we'd like to dismiss them and just move forward. So we don't have another appeal and then appeal at the summary judgment stage. We'd like to just move forward against the, against the city and the officers who aren't subject to this appeal. Remind me who the officers are who aren't subject to the appeal? It's Gonzalez, Bryant, and Goins. Goins, right. Pretty sure that's accurate. And Goins is the one with the affidavit on the warrant. Yes, Your Honor. In Carswell, that's what happened. This case, the court did not review the pleadings to evaluate whether or not they overcame this, the, whether or not they overcame the qualified immunity defense. They remanded the case back down to the lower court, citing this court's general rule of review, where it doesn't decide issues that haven't been fully decided by the district court. Right. And that's why the part that we talked about at the beginning is so important, because to me, it looks like the district court did fully decide the issue, which makes it today. So that's why I'm trying to figure out what happens next under your view. Correct. And respectfully, we disagree on that aspect, that the court hasn't issued a final decision. And you, yeah. Yes. So, you know, the, the, the police officers also suggest that this court would benefit, or that there would be a benefit of ruling on the motions to dismiss based off of judicial economy. But it wouldn't, there wouldn't be judicial economy, because Order 190 only refers to three of the claims in the motions to dismiss. They, the police officers moved on six claims. So the district court would still need to rule on those three claims that aren't mentioned in the motions to dismiss. And furthermore, going back to the jurisdiction. You don't think it was clear that the district court was denying those others? No, ma'am, Your Honor. If you look at the record, he just says he's striking them from the order. He doesn't explain why. It could equally be that he didn't mention them in the, in the order because the, because he didn't think there needed to be discovery for him to rule on them. Why shouldn't we do a limited remand and ask him whether he was, the, what, ask it, ask the Learned District Court whether it was trying to rule on the 12B, or whether it wasn't trying to rule, and whether it ruled on those other two claims, or whether it didn't? Why, why don't we, instead of guessing and disputing this, why don't we ask the district court what it meant to do in its order? That is an option that the court has, although I believe if you look at the record and the order itself, it's very clear he's not intending to rule on the motion to dismiss. And furthermore, we think that it could simply be resolved on the record with a, you know, the simple per curiam order I mentioned, and then we can get back down to the trial court and, you know, try and dismiss the police officers. Right, but they're allowed to get them dismissed with prejudice if they were right, that you didn't appeal it correctly. I mean, that, that, that your complaint didn't state a claim. That is correct. Isn't that right? Yes, Your Honor. So it's not just non, it's, it's not a non-event. That is correct, Your Honor. I would like to point out that this court has collateral order jurisdiction over the 190 based off of Carswell, but it doesn't have collateral order jurisdiction over, over dispositions that are tentative, informal, or incomplete. And, you know, we contend that this is a preliminary ruling on whether or not the pleadings suffice, and that he was officers cite to us, recognize that one of the cases that they cite to for saying this court has jurisdiction is a pendant jurisdiction case, and that's Magnolia Marine. And in that case, the court had jurisdiction over an injunction, and the court Suisante assumed jurisdiction over declaratory judgment claims. And it did so because there was a final order on them, and because it held that they were, those issues were completely intertwined. Well, you don't have that here. You don't have a final order, and the issues aren't intertwined. To be able to rule on order 190, this court doesn't need to look at the pleadings. It can simply look at order 190, recognize that it requires discovery, and under Carswell, that's invalid, and therefore it should be vacated. Counsel, I was just making sure, I'm gonna make sure I have my notes right on your position on the, as Judge Elrod astutely put it, our homework. As to the 10 officers that are in front of us, 10, 9 or 10? I'm not quite sure. The officers before us. In that range. You don't intend to pursue them in the district court. You intend to dismiss them anyway. That's correct. So in light of that, I'm not sure what we, suppose we just, we disagree with you on the reading of order 190. We read it as a denial, I'm sorry, yeah, a denial of qualified immunity. They're going to get dismissed by one of three people, but they're going to get dismissed. They're going to get dismissed because we are going to review the qualified immunity order and say, no, they're entitled to qualified immunity. They're going to get dismissed by you just to respond that perhaps you've already done it here today at the podium, or we're going to send it back to the district court, as you've suggested in your opening. And I suppose the first thing you're going to do is file a motion to dismiss them and go after the other three officers that we're talking about. But there's really no, I'm not hearing a, like an actual case of controversy dispute over those 10 officers, no matter what we think of order 190. Was that clear? I'm sorry if it was too long. No, well, I am a little confused, but I'm not sure I completely understand your question, but. Case or controversy should have caught your attention. Yeah, it sounds like, it sounds like you just, you don't have any dispute with these 10 officers, so we can just dismiss them, or you could, you could file a motion today, or. Well, we don't believe that they should be dismissed with prejudice, for sure. You know, we believe that the pleading sufficiently state claims against them, but we are willing to expedite this case to dismiss them, but it certainly shouldn't be with prejudice. The pleadings state claims against them sufficiently, and so we don't believe it should be with prejudice, if that's what you're asking. But you can't have your cake and eat it too, can you? I'm even more confused now. I don't know what it means. I agree with Judge Elrod. I don't understand what it means to dismiss them without prejudice. Do you want to go forward against them, get discovery, get money damages, sue them in their negative capacities, or do you not? No, but I also don't think it really matters. I mean, I mentioned that partly just to give, you know, some context to what we plan to do further below, but honestly, for the outcome of this, I don't think it matters, because, you know, what you need to do is you need to, well, what we contend is just look at it under Carswell, and it gets vacated, and then what happens below doesn't matter, but even... Why are you fighting prejudice or not with prejudice, unless you intend to pursue them at some point? I think there's potentially some, if they are dismissed with prejudice, it could potentially, or they have an argument, that it impacts the other claims. And also, if there's no basis for it being dismissed with prejudice, the pleadings overcome their qualified immunity defenses. Well, we would have to determine that if this order says that it's in our court now. So somebody, they have a right to have this court determine whether or not the pleadings do, in fact, overcome the qualified immunity at this stage, if the district court has indeed made the ruling, and we've filed lots of briefs and spent lots of time and money and effort and... Respectfully, I believe that that would be a decision that the district court should make, because I don't believe the district court has made a decision yet. Well, that's the issue of whether they have or not, and so maybe we should ask them if they have or not. And likewise, the district court could decide, you know, they shouldn't be dismissed, and that he is going to decide the motions to dismiss. But it would be, it seems incredibly odd to ask us to make a decision as to 10 defendants on constitutional claims that you don't intend to pursue. So, I mean, just imagine, let's abstract away from this case for a second. We have a hypothetical case with a tort claim and a contract claim, and the parties file briefs and everyone's litigating both things, and then the counsel for the appellee gets up at the argument and says, it doesn't really matter what happens to the tort claim, Your Honor, because we don't intend to pursue it. Well, in that circumstance, we wouldn't issue an advisory opinion on the tort claim because you just abandoned it. So if you don't, if we're dismissing the 10 individual officers at issue today, then that's it, right? Then all we're talking about is Carswell and Order 190, and it sounds like you're, that's really the nub of the dispute or the homework. Well, isn't it moot at that point? Because if they are dismissing the people against whom the discovery was. There are lots of arguments that could be made, that there's going to have to be sorted out, one of which is they might, the defendants might object to a voluntary dismissal at this point and say, we've gone too far, you can't dismiss it voluntarily without the permission of the district court. So what we're fussing over here is dismissal with prejudice around. Right. That's what I'm hearing. And honestly, as I've been saying, I don't think the court needs to even get that far because that's, I think, should be left to the district court. And really, this is simple. Carswell dictates what should happen to Order 190. The other case that they cite to for their basis for jurisdiction is a case involving a remand case. And there, in that case, the, it relates to whether or not there was statutory jurisdiction over the issue. And there's no statutory basis here. So the police officers are asking for the court to basically tell the district court what to do, because the district court hasn't decided the issue of qualified immunity. The district court could, after the discovery is issued, deny or grant the motions to dismiss. The Order 190 does not prevent him from doing that. And so that's another reason why we don't think it's a final order on qualified immunity on the pleadings. All right, let's say we remand. Next week, the district court says, I'm denying qualified immunity. Are you coming right back here? Are you going to try to dismiss without prejudice or what? Correct. We would try and dismiss without prejudice. But there's none of that. I mean, Order 190 is just about, it's a discovery order. It is not a ruling on the motions to dismiss. And so it's very simple to just look at Order 190, look at Carswell, and remand back to the district court. And then you guys don't have to decide any of these confusing issues. The district court can. And let the district court decide them. Issue full-fledged opinions. Okay, we've got your arguments. Thank you, counsel. Thank you. First, I'd like to correct counsel's response to your question, Judge Oldham, about who were the other three officers. Officer Gonzalez is a part of this appeal. She meant to say, I believe, Officer Gallegos. So the three who are not are Goins, Bryant, and Gallegos. Can we do a limited remand and say, tell us in five days, or this is just hypothetically, I'm not saying that we wouldn't have decided anything. Please tell us whether you intended, you did rule or not. It looks like you did. The reason that won't work here is that we had already asked the district court for clarification. Well. And order 190 is the clarification. But we could ask it. We might not get it. Let's hope so, your honor. Let's hope so. You know, just really quick, find out for sure whether he meant to rule or the district court meant to rule on the 12B or not. If the court, the district court, says, issues a new order that says, that was a denial or here's my denial, we're going to be back here as soon as the calendar permits. Right. You don't have to come back. We may not. More argument here. But I mean, you don't have to come back. If the court said that was a denial, then we just rule on whether or not the three, or either the three or the five. We'll have to ask them to clarify the three or the five. Whether or not your client is entitled to qualified immunity. Okay, Judge Elrod, I'm wanting to make sure I'm following exactly the scenario that you're suggesting. You would be retaining jurisdiction and asking. Limited remand. It's unlimited. Answer this question. Just answer this question. Did you grant 12B on these three claims? And what did you grant 12B on these other two claims? Or did you deny on those two claims? Okay. What did you do in this order on that day? Not what do you intend to do next week? But what did you do on that particular day? I agree with each of you that that would have more weight than our request for the same thing. But I think that is, at least in theory, a workable thing to do. And if the court says that that was a denial of qualified immunity, then that leaves all of this here. If the court says that was not a denial of qualified immunity, then we have, after multiple attempts, been trying to get the judge to rule on qualified immunity. And under Carswell, he is required to do that at the earliest possible stage. And that stage is, that's long gone. Right. Well, wouldn't we just say you must do that within seven days, and this discovery order is out because of Carswell. And we'd all move on down the road. That could work. And then all of these same arguments would be here. And I'm not pre-foreshadowing. I don't speak for the court. I'm just wondering, how do you get out of this quagmire that we're just kind of stuck in this circle where they think they get a dismissal on this, and we're not getting anywhere on any of the actual claims? And do we even have a case anymore? Judge, we've been asking ourselves how we get out of this quagmire for a long time. And to that, what is your position on the 10 defendants who were dismissed today? I mean, do we, is that, I've never heard this before, so I don't know exactly how to operationalize the, but so I want to make sure I understand your position. I couldn't tell that they were dismissed today. Is that what happened here? I don't know. I asked counsel on the other side. I'm not sure. It sounds like they don't want to pursue, I don't want to put words in counsel's mouth, but what I heard was that the plaintiffs do not intend to pursue these 10 officers. At present. Yeah, at present. Without prejudice. I'm not sure exactly what it means to sue without prejudice. Is that of legal significance in your view? Yes, they attempted to do that during the- Today, right now. Earlier as well. The mechanisms that led us to get here after the appeal was already underway, the briefing was underway. And they quite clearly have stated that they believe they have a claim. They want to dismiss with prejudice so that they can take depositions. Without prejudice. I'm sorry, pardon me. Thank you for correcting me on that. Without prejudice so that they can take depositions. Of who? Of the officers. Of these 10? Of the one that they say they want to dismiss without prejudice and then take depositions and then see how they can bring their claim against them later. That's the strategy. I see. Thank you. I did not understand. At a time. I appreciate that. Thank you. Thank you. I think we have your architect.